```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND
```

JOHNNIE BUTLER

v.                                CIVIL ACTION NO. DAF-12-3468
                                  CRIMINAL NO. 1:08-00381-DAF-1

UNITED STATES OF AMERICA

## MEMORANDUM OPINION AND ORDER

Pending before the court is Butler's pro se "Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody," pursuant to 28 U.S.C. § 2255. (ECF 564). This matter was originally assigned to Judge Ellen Lipton Hollander. By Order entered October 15, 2014, Judge Hollander denied Butler's motion as to the majority of his claims but held certain claims regarding plea negotiations (Claims 8 and 12) in abeyance. (ECF 597). As to Claims 8 and 12, Judge Hollander sought to expand the record and ordered the government to produce "any evidence it may have regarding plea negotiations with Butler and/or his counsel, and/or evidence pertaining to the government's contention that it would not offer a plea agreement to Butler without a requirement of his cooperation." Id. The government's response to that Order included an affidavit from the Honorable George J. Hazel, a United States District Judge for the District of Maryland and, therefore, one of Judge Hollander's colleagues. (ECF 611-1). For this reason, Judge Hollander recused herself from further consideration of the claims herein and the

undersigned was assigned to Mr. Butler's case.  Having now reviewed the remaining grounds asserted by Mr. Butler, his motion under § 2255 is **DENIED**.

## Discussion

Judge Hollander's Memorandum Opinion of October 15, 2014 (ECF 596) provides a thorough account of the factual and procedural background, as well as a discussion of the controlling principles of law and standard of review.  For this reason, the court has fully adopted her opinion herein.

With respect to the claims for which Judge Hollander determined expansion of the record was necessary, she noted:

> In Claim 8, Butler asserts that Saunders [his attorney] was constitutionally deficient because he failed to communicate to the government Butler's willingness to accept a guilty plea on one of the four counts against him, so long as the deal would not involve cooperation.  In his Memo, ECF 564-1 at 18-19, Butler said: "Movant apprised counsel that he could not cooperate . . . Yet counsel would not negotiate . . . a plea void of cooperation or a conditional plea. . . ."  In Butler's Affidavit, ECF 564-6, at paragraph eight, Butler said: "I told Saunders that I was not guilty of killing anyone and could not cooperate, but would possibly plead guilty to the drug charges.  Attorney Saunder[s] stated that that was unacceptable even though he did not – to my knowledge – confer with the AUSA during our conversation[.]"  And, in his Affidavit at paragraph five, in response to Saunder's advice that Butler should cooperate, Butler said: "I became frustrated and upset with counsel for going against my specific wishes and trying to have me be an informant."  Butler further asserts that he suffered prejudice, stating: "Had counsel properly advised movant of his plea options at

2

the plea bargaining phase, and attacked the prosecutorial misconduct in . . .the contentions . . . stated [in the Memo] . . . there [is] no way movant would have pled not guilty and insisted on a trial." Memo at 20.

In Claim 12, Butler argues: "Had counsel provided the Movant with adequate and competent legal advice [regarding the application of the federal Sentencing Guidelines], the Movant would have been amenable to plea negotiations resulting in his guilty plea and a sentence short of Life imprisonment without parole." Memo at 34. Further, Butler complains that Saunders did not provide him with adequate information and advice so as to enable him to make an "<u>intelligent</u> and <u>informed</u>" decision whether to pursue plea negotiations. . . ." <u>Id.</u> (Emphasis in original.)

Butler does not address whether different advice regarding the Guidelines would have changed his mind about whether to cooperate. *See* Butler Aff. ¶ 8 (stating he would not cooperate). Indeed, as set forth above, he has stated unequivocally that he would not cooperate.

Claims 8 and 12 fail if it is true that the government would not offer a plea for less than life unless Butler agreed to cooperate. Butler has said he would only "have been amenable" to a plea "resulting in . . . a sentence short of Life . . . ." Memo at 34. And, he states in his sworn Affidavit that he "told Saunders" that he "could not cooperate." Butler Aff. ¶ 8. Taking Butler at his word, his assertions plainly demonstrate that he was not amenable to a plea if it included any form of cooperation with the government.

In his Affidavit, ECF 575-8, Saunders states that "the government made it clear and Mr. Butler was so advised that nothing less than a life imprisonment plea was possible without cooperation. And as Mr. Butler sets out, cooperation was not something he was willing to consider." Saunders Aff. at 1. Saunders also avers, *id*:

3

> I should also note that during the pendency of this case Mr. Butler became a suspect in a kidnapping/torture/rape murder in the state of Maryland (he was subsequently convicted) which also contributed to the government's adamant position regarding any plea. Therefore counsel had no room to negotiate any plea bargain absent cooperation. Not incidentally Mr. Butler asserted he was innocent of the drug conspiracy as well.

Saunders included in his Affidavit pages of his own notes. *E.g., id.* at 2. One of these images shows handwritten notes as follows: ∆ not interested in plea disc. ∆ adamant that he did not do murder; no way to deal w/ Gov, w/ [unintelligible] admit [unintelligible]." *Id*. Presumably, this states that "defendant was not interested in a plea discussion," and "defendant was adamant that he did not do [the] murder; [there is] no way to deal with government without [defendant's being willing to] admit that [he committed the alleged murder.]"

The government argues that, in any case, Butler has failed to show prejudice. In its Opposition at 13 n.2, ECF 575, the government notes that Butler does not state, unequivocally, that he would have pleaded guilty if the government offered a deal that did not involve cooperation. *See also* Memo at 20. Thus, it argues, "the defendant does not even appear to be claiming that he would have pleaded guilty to the indictment had his counsel been effective." Opposition at 13, n.2. Moreover, it claims that Butler would not plead if he had to cooperate, and the government was unwilling to negotiate a plea agreement without cooperation. Opposition at 20. "Thus," it concludes, "the defendant may or may not wish now that he had pursued a plea, but the Government *seemed disinclined* to enter into any such agreement." *Id.* (emphasis added).

4

As I see it, Butler and Saunders have submitted contradictory sworn statements as to whether Saunders sought a plea deal for Butler that did not include cooperation. Butler complains that Saunders never approached the government regarding a plea deal void of cooperation. *E.g.*, Butler Aff. ¶ 8. Saunders seems to say that he did, and that the government would agree to nothing less than life imprisonment without cooperation. ECF 575-8, Saunders Aff. at 1 ("[T]he government made it clear and Mr. Butler was so advised that nothing less than a life imprisonment plea was possible without cooperation."). This dispute concerns a material fact, because Butler asserts that his decision-making would have been different if a plea deal without cooperation were possible, and that he did not know if it were possible because of counsel's performance. ECF 564-1 at 23; ECF 575 at 20; *see also Lafler*, 132 S. Ct. at 1384. Thus, it appears that, with regard to Butler's Sixth Amendment claim, Butler presents "disputed material facts and a credibility determination is necessary to resolve the issue." *Robertson*, 219 F. App'x. at 286.

Moreover, the government has merely asserted in its Memo that it insisted on cooperation. *See, e.g.*, Opposition at 20. The government states: "Mr. Saunders' affidavit indicates that he spoke to the Government about a possible plea deal, but that the Government was adamant that a plea agreement include cooperation." *Id.* It adds: "Saunders further indicates that serious state charges were also pending, which made a plea deal particularly difficult." *Id.* at 12. The government later asserts that it "*seemed disinclined* to enter into any such agreement." *Id.* at 20 (emphasis added). In any event, it has not corroborated Saunders's assertion *with evidence*.

Noticeably absent is any affidavit or document from the government confirming that it refused to offer a plea deal to Butler void of cooperation, or that, without cooperation, it would only offer a plea to life imprisonment. If either circumstance were so, Butler could show no

5

>    prejudice resulting from Saunders's efforts regarding Claims 8 or 12, whatever they entailed. But, in its Opposition, the government relies wholly on its own assertions and Saunders's Affidavit to support its argument that "trial counsel was not ineffective in relation to plea bargaining." ECF 575 at 11.
>
>    The Court recognizes that the prosecutor now assigned to this case did not handle the pretrial or trial proceedings. However, there is no indication as to whether the government has searched its records as to this issue.
>
>    As discussed above, § 2255 requires that a court hold a hearing whenever a material fact is in dispute and resolution hinges on a credibility determination. *Raines*, 423 F.2d at 430: Witherspoon, 231 F.3d at 926-27; *Robertson*, 219 F. App'x. at 286. However, a hearing may be avoided if factual disputes can be resolved on the record alone. *See Dyess*, 730 F.3d at 359; Rule 4(b) of the § 2255 Rules. Toward that end, I may also seek to expand the record before deciding to hold a hearing. *Pender*, 514 F. App'x at 361; Rule 7(a) of the § 2255 Rules. I believe that, at this juncture, it is appropriate to attempt to expand the record.
>
>    In light of the foregoing, the government is hereby ordered to produce, within 30 days from the date of the docketing of the Order accompanying this Opinion, any evidence it may have regarding plea negotiations or attesting to the government's position on cooperation in Butler's case. *See* Rule 7 of the § 2255 Rules.

ECF 596 at pp. 49-53.

As noted above, in responding to Judge Hollander's Order to Produce, the government submitted the Declaration of George J. Hazel dated January 14, 2015. (ECF 611-1). Judge Hazel formerly served as an Assistant United States Attorney for the District of Maryland from 2008 to 2010. See id. at ¶ 1. In that capacity,

6

AUSA Hazel "served as the lead prosecutor in the prosecution of Johnnie Butler and his co-conspirators. . . ." Id. at ¶ 2. Regarding his trial strategy and plea negotiations between the government and Butler, Hazel stated:

> 3.  Mr. Butler was the head of a violent cocaine and heroin distribution organization operating in Baltimore City.  In the course of the government's investigation, it became clear that Mr. Butler was responsible for at least two murders, and that, as head of the drug distribution organization, he was by far the most culpable of any of the ten co-conspirators who were indicted in the Criminal Case.  My prosecutorial strategy in the Criminal Case was to obtain the cooperation of lower-level members of the organization through plea agreements, and to use their truthful testimony against Mr. Butler and his second-in-command, Calvin Wright.  Ultimately, all of Mr. Butler's co-defendants except Mr. Wright agreed to plea guilty.  Some of these codefendants testified against Mr. Butler and Mr. Wright at trial.
>
> 4.  Mr. Butler was represented in the Criminal Case by attorney Thomas J. Saunders.  I recall having only one conversation with Mr. Saunders regarding the possibility that Mr. Butler might plead guilty.  Mr. Saunders approached me and asked, in substance, if the government would be amenable to a plea offer for an agreed-upon term of incarceration.  I do not remember the precise term of incarceration that Mr. Saunders proposed or if we discussed the possibility of cooperation, but I do know that I rejected it immediately because the figure he proposed was far too low given the seriousness of Mr. Butler's conduct and the sentence that Mr. Butler would likely receive following trial. While I do not recall the exact date of this conversation with Mr. Saunders, I do know that it occurred sometime before August 2009, when the Grand Jury returned a superseding indictment that added to the Criminal Case, for the first time,

7

>       allegations related to the murder of Fernando
>       Rodriguez by Mr. Butler.
>
>            5.   After the return of the superseding
>       indictment in August 2009, I recall no further
>       discussions with Mr. Saunders concerning a plea
>       by Mr. Butler, nor any internal government
>       discussions about the possibility that Mr. Butler
>       would be offered a guilty plea agreement.

Id. at ¶¶ 3-5.  Significantly, Hazel also testified that "[a]s the case progressed, I was not inclined to pursue a plea agreement with Mr. Butler because of the seriousness of his conduct and the strength of the evidence against him, and because he was the kingpin of the violent criminal organization targeted in the Criminal Case.  Furthermore, *I can state categorically that I would not have agreed to have the government enter into a plea agreement with Mr. Butler absent either his cooperation or a life sentence*."  Id. at ¶ 6 (emphasis added).

A brief recitation of the principles of law governing Butler's claims related to plea negotiations bears mentioning at this point.  First, the standards established by the United States Supreme Court in determining whether a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984).  Under Strickland, a plaintiff must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of

8

the trial unreliable. <u>Id.</u> at 687-91. Counsel's performance is entitled to a presumption of reasonableness. <u>Id</u>.

Second, the Supreme Court has held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. <u>Missouri v. Frye</u>, 132 S. Ct. 1399, 1405 (2012). However, the Court has also made clear that a defendant has "no right to be offered a plea . . . nor a federal right that the judge accept it." <u>Lafler v. Cooper</u>, 132 S. Ct. 1376, 1387 (2012) (quoting <u>Frye</u> at 1410).

Finally, "[a] plea offer actually extended is a wholly different matter from a plea bargain a petitioner simply believes his attorney could or should have obtained for him." <u>Wessling v. Kenney</u>, No. 4:04cv3375, 2007 WL 1289945, *2 (D. Neb. Mar. 13, 2007). Furthermore, "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561 (1977).

It is undisputed that the government never made a plea offer to Butler. Therefore, it is likewise undisputed that Butler's counsel was not deficient in failing to communicate a plea offer to him because none existed. Distilled to its essence, Butler's claim is actually that his attorney should have been more aggressive in negotiating a non-cooperation plea on his behalf. However, even if this were true, Butler cannot establish that he suffered prejudice under <u>Strickland</u> because, as noted

9

above, a criminal defendant has no right to a plea agreement of any kind.  Furthermore, Butler's utter inability to demonstrate prejudice is established by AUSA Hazel's declaration that the government would never have entered into a plea agreement with Butler absent his cooperation or a life sentence, terms that Butler himself testified were nonnegotiable.  <u>See</u> ECF 596 at p. ("Claims 8 and 12 fail if it is true that the government would not offer a plea for less than life unless Butler agreed to cooperate."); <u>see also</u> <u>Morrow v. United States</u>, Civil No. PJM 06-1801, 2007 WL 2225827, *3 (D. Md. July 30, 2007) ("However, failure to pursue a plea bargain is not sufficient proof of ineffective assistance of counsel where the record does not indicate that the Government would have offered one.").

In discussing the uphill battle a movant faces in demonstrating <u>Strickland</u> prejudice on facts similar to those herein, one court noted:

> [E]ven if the petitioner's trial counsel rendered ineffective assistance during the plea negotiations, the petitioner cannot establish that he suffered any actual prejudice.  The petitioner had no entitlement to a plea agreement of any kind.  "[T]here is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial.  It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilty."  <u>Weatherford v. Bursey</u>, 429 U.S. 545, 561 (1977).
>
> In fact, it is pure speculation to suppose that under any circumstances the plea bargain the petitioner wanted would have materialized. . . .

10

> [N]o plea bargain on the terms he wanted was ever offered. . . .
>
> Even in then remote event that the prosecutor might have offered the petitioner the kind of plea bargain he wanted, it is pure speculation to assume that the court would have approved the bargain. . . The kind of hindsight in which the petitioner engages to demonstrate prejudice is too speculative.
>
> Unlike the precedents cited by the petitioner, his own conviction did not result from a plea of guilty that he now regrets, or from rejection of a plea offer that he now wishes he had accepted.  It is true that his attorney failed to obtain the plea bargain the petitioner would have liked.  However, the prosecutor never had any obligation to offer such an agreement.  Therefore, the absence of a desirable plea bargain cannot be traced directly to trial counsel's performance.

Wessling v. Kenney, No. 4:04cv3375, 2007 WL 1289945, *3 (D. Neb. Mar. 13, 2007).

In summary, for the reasons stated above, Butler cannot demonstrate Strickland prejudice in connection with his attorney's handling of plea negotiations.  No evidentiary hearing is required.  Therefore, Butler's motion under 28 U.S.C. § 2255 is **DENIED** in its entirety and the Clerk is directed to remove the matter from the court's docket.

Additionally, the court has considered whether to grant a certificate of appealability.  See 28 U.S.C. § 2253(c).  A certificate will not be granted unless there is "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied only upon a showing that

reasonable jurists would find that any assessment of the constitutional claims by this court is debatable or wrong and that any dispositive procedural ruling is likewise debatable. Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-84 (4th Cir. 2001).  The court concludes that the governing standard is not satisfied in this instance.  Accordingly, the court **DENIES** a certificate of appealability.

The Clerk is directed to send copies of this Order to counsel of record and unrepresented parties.

**IT IS SO ORDERED** this 30th day of March, 2016.

ENTER:

*David A. Faber* (signature)

David A. Faber
Senior United States District Judge